**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF CALIFORNIA, et al., | |
| *Plaintiffs*, | |
| and | |
| CALPINE CORPORATION, et al., | |
| *Proposed Intervenor Plaintiffs*, | Civil Action No. 1:19-cv-02826-KBJ |
| v. | |
| ELAINE L. CHAO, et al., | |
| *Defendants.* | |
| ENVIRONMENTAL DEFENSE FUND, et al., | |
| *Plaintiffs*, | |
| and | |
| CALPINE CORPORATION, et al., | |
| *Proposed Intervenor Plaintiffs*, | Civil Action No. 1:19-cv-02907-KBJ |
| v. | |
| ELAINE L. CHAO, et al., | |
| *Defendants.* | |
| SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT, et al., | |
| *Plaintiffs*, | |
| and | |
| CALPINE CORPORATION, et al.., | |
| *Proposed Intervenor Plaintiffs*, | Civil Action No. 1:19-cv-03436-KBJ |
| v. | |
| ELAINE L. CHAO, et al., | |
| *Defendants.* | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO INTERVENE AS PLAINTIFFS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................................ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

I.      THE POWER COMPANIES ARE ENTITLED TO INTERVENE AS OF RIGHT ......... 3

        A.      The Power Companies Have Standing to Intervene ................................................. 3

        B.      The Power Companies Satisfy Rule 24(a) Requirements ...................................... 7

                1.      The Motion to Intervene is Timely ............................................................ 7

                2.      The Power Companies Have Legally Protected Interests in the
                        Subject Matter of These Cases .................................................................. 8

                3.      The Power Companies' Interests May be Impaired by these Cases .......... 8

                4.      The Power Companies' Interests Are Not Adequately Represented
                        by the Existing Parties ............................................................................. 9

II.     ALTERNATIVELY, THE POWER COMPANIES REQUEST THIS COURT
        GRANT PERMISSIVE INTERVENTION ...................................................................... 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

*Defenders of Wildlife v. Perciasepe*,
  714 F.3d 1317 (D.C. Cir. 2013) .......................................................................... 3, 4

*\*Dimond v. Dist. of Columbia*,
  792 F.2d 179 (D.C. Cir. 1986) ............................................................................. 9

*Hodgson v. United Mine Workers of America*,
  473 F.2d 118 (D.C. Cir. 1972) ............................................................................. 7

*\*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2013) ............................................................................. 3

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................. 3

*Mova Pharm. Corp. v. Shalala*,
  140 F.3d 1060 (D.C. Cir. 1998) ........................................................................... 8

*Nat. Res. Def. Council v. Costle*,
  561 F.2d 904 (D.C. Cir. 1997) ............................................................................. 7

*Nat. Res. Def. Council v. EPA*,
  755 F.3d 1010 (D.C. Cir. 2014) .......................................................................... 3, 4

*Navistar, Inc. v. Jackson*,
  840 F. Supp. 2d 357 (D.D.C. 2012) ..................................................................... 7

*Sierra Club v. EPA*,
  292 F.3d 895 (D.C. Cir. 2002) ........................................................................... 3, 4

## STATUTES, REGULATIONS AND OTHER AUTHORITIES

84 Fed. Reg. 51,310 (Sept. 27, 2019) ....................................................................... 2, 8

*Fed. R. Civ. P. 24(a) ................................................................................................. 3, 7

*Fed. R. Civ. P. 24(b) ............................................................................................... 9, 10

*Authorities chiefly relied upon are marked with an asterisk.

## INTRODUCTION

Proposed Intervenor Plaintiffs Calpine Corporation ("Calpine"), Consolidated Edison, Inc. ("Con Edison"), National Grid USA ("National Grid"), New York Power Authority ("NYPA"), and Power Companies Climate Coalition[1] (collectively, the "Power Companies") are a coalition of major investor-owned utilities, the nation's largest state power authority, the nation's largest and tenth largest municipal utilities and a major independent power producer, all committed to generating clean electricity and supporting the widespread adoption of electric vehicles to combat climate change. They have made and are making significant investments to build infrastructure and position their generating resources to support increased consumer adoption of electric vehicles.

The Power Companies are making these investments on the basis of greenhouse gas ("GHG") and zero emission vehicle ("ZEV") standards promulgated by the State of California pursuant to its unique Clean Air Act ("CAA") authority to regulate motor vehicle emissions and by the many other states that have adopted identical standards pursuant to corresponding CAA authority (known as the "Section 177 States"). These federally-approved GHG and ZEV standards directly incentivize investments in widespread vehicle electrification. To date, California's and the Section 177 States' ability to continue enforcing their GHG and ZEV standards—regardless of changes in political leadership at the federal level—has provided the long-term certainty needed for the Power Companies to incorporate electrification of the transportation sector as a critical

---

[1] Power Companies Climate Coalition is an unincorporated association whose members include the Los Angeles Department of Water and Power ("LADWP"), Seattle City Light, NYPA, Con Edison, National Grid and each of Con Edison's and National Grid's regulated utility subsidiaries. Other members of Power Companies Climate Coalition, including Exelon Corporation and its subsidiaries, Pacific Gas and Electric Company, and Sacramento Municipal Utility District, intend to participate in these related cases through their membership in proposed intervenor plaintiff the National Coalition for Advanced Transportation (Mot. of Nat. Coalition for Advanced Transportation to Intervene as a Plaintiff, Case No. 1:19-cv-02826-KBJ, Doc. 39; Mot. of Nat. Coalition for Advanced Transportation to Intervene as a Plaintiff, Case No. 1:19-cv-02907-KBJ, Doc. 26). Other Power Companies Climate Coalition members, Public Service Enterprise Group Incorporated and its subsidiaries, are not participating in this litigation.

component of their business models and investment strategies.  The Power Companies are moving to intervene in the above-captioned cases to ensure this regulatory framework remains intact and that their interests and investments are protected.

At issue in these three related cases is the preemptive scope of one long-extant clause in the 1975 Energy Policy and Conservation Act ("EPCA"), which heretofore has posed no obstacle to California's independent regulation of motor vehicle emissions in tandem with harmonized federal fuel economy standards.  In September 2019, the U.S. Department of Transportation's National Highway Traffic Safety Administration ("NHTSA") issued a final rule that abruptly reinterpreted the scope of this clause to prevent California and the Section 177 States from enforcing their existing GHG and ZEV standards or enacting new standards.  *See* "The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule Part One: One National Program," 84 Fed. Reg. 51,310, 51,324 (Sept. 27, 2019) (the "Preemption Rule") (declaring existing standards "void *ab initio*").  This prohibition applies even if the U.S. Environmental Protection Agency ("EPA") has previously granted a waiver of preemption for the state to implement such standards pursuant to Section 209 of the CAA, or approved a State Implementation Plan that incorporates the standards as a means of achieving the National Ambient Air Quality Standards ("NAAQS").

The Power Companies believe that the Preemption Rule is without legal merit and should be set aside as unlawful, as it conflicts with the CAA and usurps the statutory power of the EPA to issue waivers that allow California to adopt more stringent vehicle emissions standards and other states to then adopt identical standards.  If the Preemption Rule is upheld against judicial challenge as an accurate interpretation of the preemptive scope of EPCA, it will void the regulatory framework that supports the Power Companies' vehicle electrification efforts and preclude states from promulgating new standards requiring the deployment of electric vehicles.

2

For these reasons and as described below, the Power Companies have significant interests that will be impaired if the Preemption Rule is not set aside and declared unlawful, and those interests may not be adequately represented by the existing parties to the cases. The Court should grant this motion to intervene.

## ARGUMENT

## I.   THE POWER COMPANIES ARE ENTITLED TO INTERVENE AS OF RIGHT

Under Federal Rule of Civil Procedure 24(a)(2), a movant is entitled to intervene as of right if: (1) the motion is timely; (2) the movant "claims an interest relating to the property or transaction that is the subject of the action"; (3) "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) the movant's interest is not adequately represented by other parties. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). In this Circuit, "in addition to establishing its qualification for intervention under Rule 24(a)(2), a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution." *Id.* at 731–32. The Power Companies satisfy all of these requirements.

### A.   The Power Companies Have Standing to Intervene

The Power Companies have standing to intervene in these cases because their interests will be significantly and directly impaired by the Preemption Rule and would be redressed by a favorable decision of this Court. To establish standing under Article III, a party must demonstrate (1) a concrete and particularized injury in fact that is actual or imminent, (2) that the injury is fairly traceable to the challenged action, and (3) that the injury would likely be redressed if the Court granted the requested relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An association has standing to intervene on behalf of its members if at least one member would have standing to sue in its own right, the interests the association seeks to protect "are germane to the

organization's purpose", and "neither the claim asserted nor the relief requested requires the participation of individual members." *Nat. Res. Def. Council v. EPA*, 755 F.3d 1010, 1016 (D.C. Cir. 2014) (quoting *Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1323 (D.C. Cir. 2013)); *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).

By preventing states from regulating carbon dioxide emissions from automobiles and voiding existing state regulations already in place, the Preemption Rule would cause substantial economic and environmental harm to the Power Companies and the millions of customers they serve. The Power Companies have made and are making significant investments to build the infrastructure needed to support increased consumer adoption of electric vehicles in accordance with the GHG and ZEV emissions standards adopted by California and the Section 177 States. The Power Companies have also made significant investments to position their generating resources to supply low- and zero-carbon power to the increasingly electrified vehicle fleet. They are also working to establish rate structures and programs to maximize the benefits and minimize the costs associated with integrating electric vehicle load to the grid.

For example, Con Edison is working to install charging ports across New York City, offers time-of-use rates to maximize savings and benefits for electric vehicle owners and, through its SmartCharge New York program, offers electric vehicle owners further incentives to charge at off-peak hours. National Grid has worked to install significant charging infrastructure throughout Massachusetts, Rhode Island, and New York, offers a voluntary time-of-use rate to incentivize off-peak charging and, through its electric vehicle pilot program in Massachusetts, is installing more charging ports and is working to boost adoption rates. NYPA, through its EVolve NY program, will invest up to $250,000,000 through 2025 to build on its existing investments in electric vehicle infrastructure, service, and consumer awareness. LADWP offers rebates for the purchase of

certain used electric vehicles and installation of electric vehicle chargers through its Charge Up LA! program, provides electric vehicle discount charging rates through its time-of-use meter service option, and is working to install charging infrastructure throughout the City of Los Angeles to support the growth of electric transportation.  Likewise, Seattle City Light, through its Drive Clean Seattle program, is pursuing significant investments in charging infrastructure and innovative rate structures to effectuate its Transportation Electrification Strategy.

The Power Companies are making these investments and taking these actions to realize the significant economic and environmental benefits that integration of vehicles to the electricity grid can provide to vehicle owners, electric power companies, utilities and customers.  For example, charging electric vehicles can help shift load to hours when the grid is underutilized and the cost of electricity is low, bringing down total system costs, and can also support the integration of renewable energy resources, which is a goal of the states and jurisdictions served by many of the Power Companies.  Additionally, the widespread deployment of electric vehicles fueled by increasingly clean sources of electricity significantly reduces emissions of smog- and soot-forming pollutants, and can help attain and maintain the NAAQS in jurisdictions served by the Power Companies.

The GHG and ZEV standards adopted by California and the Section 177 States provide the regulatory certainty needed for the electricity sector to continue making investments to support vehicle electrification.  By preempting and voiding these standards, the Preemption Rule prevents California, the Section 177 States, and other states that might seek to adopt identical standards from mandating that automakers deploy electric vehicles in the numbers and on the schedule needed to realize the full benefits of the Power Companies' investments and commitments, which, due to long planning horizons within the power sector, often must be made years in advance.  In

addition, California and many Section 177 States are relying upon the reductions in both GHG and criteria pollutant emissions resulting from the rapid deployment of electric vehicles to achieve state climate goals and the NAAQS for ozone and fine particulate matter.  If those reductions do not occur, then some of the Power Companies' existing generation resources will face additional pressure to reduce emissions more rapidly or at greater cost to customers than could be achieved through the widespread deployment of electric vehicles.

These injuries are directly traceable to the Preemption Rule and would be redressed by the relief requested in the Proposed Complaint below, namely, that the Court set aside the Preemption Rule and declare that its conclusions regarding preemption are not supported by EPCA or the CAA.  As a result, the Power Companies have standing to challenge the Preemption Rule, including proposed Intervenor Plaintiffs Calpine, Con Edison, National Grid, and NYPA. Likewise, proposed Intervenor Plaintiff Power Companies Climate Coalition has standing in this case because it is an association with standing to sue on behalf of its members, which include LADWP and Seattle City Light (respectively, the largest and tenth largest municipal utilities in the U.S.), NYPA (the largest state power authority), and Con Edison and National Grid and each of their respective regulated utilities.[2]  The Power Companies' substantial investments in electric vehicle infrastructure are premised upon the state laws that the Preemption Rule purports to void. In the case of proposed Intervenor Plaintiff Power Companies Climate Coalition, these interests are germane to its purpose of advocating for responsible solutions to address climate change and reduce GHG emissions.  The Power Companies, therefore, separately and collectively have standing to challenge the Preemption Rule in this Court.

---

[2] For a description of the members of Power Companies Climate Coalition, see *supra* note 1.

### B.      The Power Companies Satisfy Rule 24(a) Requirements

#### 1.      The Motion to Intervene is Timely

A motion to intervene under Rule 24(a) must be timely.  Whether such a motion is timely must be determined from all the relevant circumstances. *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 907 (D.C. Cir. 1977).  This requires courts to examine and weigh a variety of factors, including the amount of time that has elapsed since the litigation began, the purpose for which intervention is sought, the need for intervention as a means for preserving the applicant's rights, and the probability of prejudice to the parties already in the case.  *Hodgson v. United Mine Workers of America*, 473 F.2d 118, 129 (D.C. Cir. 1972); *see also Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 361 (D.D.C. 2012) (motion to intervene timely filed nearly two and a half months after complaint).

The Power Companies' motion is timely, as it comes just over ten weeks after the first filed complaint in these related cases and less than three weeks after the most recently filed complaint, *South Coast Air Quality Management District, et al. v. Chao, et al.*, Case No. 1:19-cv-03436-KBJ (filed Nov. 14, 2019).  Moreover, the Power Companies' intervention comes before any responsive pleadings on the merits have been filed and would result in no prejudice to any of the existing parties.  Further, while Defendants in the State and NGO cases have served motions to dismiss on jurisdictional grounds, this intervention comes after the November 27, 2019 deadline for service of replies, and the Power Companies do not intend to seek leave to file separate responses to Defendants' motions or otherwise take a position with respect to the underlying jurisdictional issues addressed in that briefing.  As a result, the Power Companies' proposed intervention would not unduly disadvantage the existing parties.  This motion is timely.

2.      **The Power Companies Have Legally Protected Interests in the Subject Matter of These Cases**

For the same reasons that the Power Companies have Article III standing as demonstrated above, they have legally protected interests in the subject matter of these cases sufficient to meet Rule 24(a) requirements.  *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (party "need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a).").  By purporting to void the existing state GHG and ZEV standards and precluding the adoption of any similar standards, the Preemption Rule would bar states from mandating that electric vehicles be deployed in the numbers and on the schedule needed to realize the full benefits of the Power Companies' investments in electric vehicle infrastructure and generating resources to supply low- and zero-carbon power to such vehicles.  The Power Companies therefore possess substantial interest in these cases that warrants intervention to protect.

3.      **The Power Companies' Interests May be Impaired by these Cases**

As outlined above, the Preemption Rule threatens to significantly and directly impair the interests of the Power Companies if not set aside and declared unlawful by this Court.  NHTSA has asserted that its Preemption Rule would bar states from regulating carbon dioxide emissions from new cars and trucks, including the promulgation and enforcement of ZEV sale requirements, and would render existing GHG and ZEV standards currently in place "void *ab initio*."[3]  The authority of California and the Section 177 States to continue implementing strong state standards to reduce GHG emissions from new cars and trucks is a core regulatory driver supporting the Power Companies' substantial investments in clean vehicle infrastructure.  By voiding those

_____

[3] 84 Fed. Reg. at 51,324.

existing standards and barring the states from adopting any more stringent standards, a decision affirming the legality of the Preemption Rule in these cases would impair the Power Companies' legally protected interest in ensuring those standards remain in place.  As a consequence, the Power Companies' interests may be impaired as a result of these cases within the meaning of Rule 24(a).

### 4.   The Power Companies' Interests Are Not Adequately Represented by the Existing Parties

None of the existing parties to these cases can be expected to adequately represent the unique investment-backed interests of the Power Companies, which are predicated on the very state standards that NHTSA's Preemption Rule targets.  The Power Companies' burden under this element is "not onerous" as they "need only show that representation of [their] interest 'may be' inadequate, not that representation will in fact be inadequate." *Dimond v. Dist. of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986).  The Power Companies' interests in protecting their significant infrastructure investments and financial stake as suppliers of power to an increasingly electrified vehicle fleet are distinct from the interests of existing parties.  This Circuit has long "recogniz[ed] the inadequacy of governmental representation of the interests of private parties in certain circumstances." *Id.*  Existing Plaintiffs consist of state and local governments, local air districts, and non-governmental environmental organizations, all of which will bring to bear a different perspective and seek to protect different interests than those of the Power Companies.  This is sufficient to establish that representation may not be adequate for the purposes of Rule 24(a).

## II.   ALTERNATIVELY, THE POWER COMPANIES REQUEST THIS COURT GRANT PERMISSIVE INTERVENTION

Though the Power Companies are entitled to intervention as of right under Rule 24(a), they also qualify for permissive intervention under Rule 24(b).  This Court has discretion to allow the Power Companies to intervene under Rule 24(b) because they will raise claims with questions of law and fact that are common to the main action, and because intervention would not unduly delay

or prejudice the adjudication of the existing parties' rights.  More specifically, as set forth in the attached Proposed Complaint, the Power Companies intend to raise many of the same claims as existing Plaintiffs in these cases, and their intervention comes on a timely basis before any merits pleading or briefing has commenced.  The Power Companies further intend not to duplicate arguments made by the existing Plaintiffs, but to bring to the attention of the Court only those arguments, interests, and perspectives that are not adequately represented by the existing Plaintiffs. Additionally, the Power Companies will join with any other similarly situated parties to brief these cases to the extent practical and required by the Court.  The Power Companies therefore request, in the alternative to intervention under Rule 24(a), that this Court exercise its discretion to allow them to permissively intervene under Rule 24(b).

## CONCLUSION

For the foregoing reasons, the Power Companies meet all of the requirements to intervene as of right under Rule 24(a), and, alternatively, should be granted permissive intervention under Rule 24(b).

Dated: December 4, 2019                    Respectfully submitted,

                                           /s/ Kevin Poloncarz
                                           KEVIN POLONCARZ
                                           D.D.C. Bar No. CA00049
                                           Donald L. Ristow
                                           Jake Levine
                                           COVINGTON & BURLING LLP
                                           Salesforce Tower
                                           415 Mission Street, 54th Floor
                                           San Francisco, CA 94105-2533
                                           (415) 591-7070
                                           kpoloncarz@cov.com

                                           *Counsel for Calpine Corporation,*
                                           *Consolidated Edison, Inc., National Grid USA,*
                                           *New York Power Authority, and Power*
                                           *Companies Climate Coalition*

11